UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXTREME REACH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| GRACE HILL MEDIA, and | ) |
| TED GARTNER, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff Extreme Reach, Inc. ("Extreme Reach"), by its undersigned counsel, as and for its complaint against Defendants Grace Hill Media ("GHM") and Ted Gartner ("Gartner"), alleges as follows:

### NATURE OF THE CASE

1. This is a complaint for breach of contract, fraud in the inducement, breach of implied covenant of good faith and fair dealing, unjust enrichment and violation of M.G.L. c. 93A. GHM signed contracts for advertising services from Extreme Reach, then ordered approximately $917,418.00 worth of services, and has refused to pay for such services. Gartner induced Extreme Reach to enter into the contracts with GHM and induced Extreme Reach to continue providing services to GHM despite knowing that GHM did not possess the ability to pay for Extreme Reach's services. Gartner falsely represented that Defendants had the resources to make payment and would, in fact, make payment for the services Defendants continued to request Extreme Reach provide.

## PARTIES

2. Plaintiff, Extreme Reach, is a Delaware corporation with its principal offices located at 75 2nd Street, Suite 720, Needham, Massachusetts.

3. Defendant, GHM, is a California corporation, with its principal offices located at 12211 Huston Street, Valley Village, California, and has repeatedly done business in Massachusetts via its dealings, communications and solicitations of services with Extreme Reach.

4. Defendant Gartner is an individual who is, upon information and belief, a resident of the state of California, who has repeatedly done business in Massachusetts via his dealings, communications and solicitations of services with Extreme Reach. Gartner holds himself out as both an officer of and a principal of GHM.

## JURISDICTION AND VENUE

5. Jurisdiction is properly placed in this Court pursuant 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship between Extreme Reach and the Defendants.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this judicial district and the Defendants are subject to personal jurisdiction in this judicial district.

7. Jurisdiction and venue is also proper in this judicial district as the contracts at issue between the parties provide explicitly that: "[t]he validity, construction and performance of this rate card shall be governed by the laws of the Commonwealth of

Massachusetts which shall have exclusive jurisdiction in the event of adjudication of this agreement." See Extreme Reach Terms and Conditions at ¶ 9 (Exhibit A).

## STATEMENT OF FACTS

8.     On July 28 and 29, 2014, Defendants executed the Extreme Reach Terms and Conditions (a true and accurate copy of which is appended hereto as Exhibit A) and SaaS Digital Platform Addendum (a true and accurate copy of which is appended hereto as Exhibit B) (collectively, the "Contracts").  The Contracts clearly set out Extreme Reach's rates and services.  At the time that Defendants entered into the Contracts, upon information and belief, Defendants knew, or should reasonably have known, that Defendants had no ability to pay for the services they ordered and continued to accept from Extreme Reach.

9.     Also in July, 2014, Defendants began submitting orders to Extreme Reach in the Commonwealth of Massachusetts, via their media buying agent, for services related to an advertising campaign for the theatrical film The Identical (the "Campaign"). Invoices for those services through August 15, 2014 totaled $184,807.00.  At the time of those orders, Defendants knew, or should reasonably have known, that they had no ability to pay for the amount of services they were ordering.

10.    At the time of entering into the Contracts and requesting Extreme Reach's services in July 2014, Gartner both personally and through his agents represented the Defendants' ability and intention to pay for the services Gartner was order all while being fully aware that Defendants knew, or should reasonably have known, that they had no ability to pay for the amount of services they were ordering.

11.     On, or about, August 14, 2014, Defendants requested from Extreme Reach in the Commonwealth of Massachusetts cost estimates for the services related to the Campaign.  Extreme Reach replied to that request on or about August 15, 2014, sending an estimate of the then-to-date charges for the Campaign to Defendants, which were approximately $184,807.00.

12.     Following Extreme Reach's August 15, 2014 correspondence regarding then-to-date charges, Defendants continued to order from Extreme Reach in the Commonwealth of Massachusetts further services related to the Campaign, thereby misrepresenting that they were willing and able to pay for such services.

13.     On August 27, 2014, Extreme Reach Sales Manager Mike Bebb sent a personal thank you correspondence to Defendant Gartner regarding "the huge distribution order" that was placed for the Campaign.  Defendant Gartner replied to Bebb in the Commonwealth of Massachusetts, on August 29, 2014, stating "Mike – all of your guys have been excellent.  thank [sic] you."

14.     Following the correspondence on August 29, 2014, Defendants continued to submit orders to Extreme Reach in the Commonwealth of Massachusetts for tens of thousands of dollars worth of services related to the Campaign from Extreme Reach – all when Defendants knew, or should reasonably have known, that they had no ability to pay for those services.  Ultimately, charges for Extreme Reach's services related to the Campaign totaled $917,418.00 by September 12, 2014.

15.     At the time of requesting Extreme Reach's services in July and August of 2014 and each time thereafter, Defendants represented, including through their media buying agents, Defendants' ability and intention to pay for the services all while

Defendants knew, or should reasonably have known, that they had no ability to pay for the amount of services they were ordering.

16. On or about October 2, 2014, Extreme Reach sent Defendants correspondence attaching copies of Defendants' outstanding invoices related to the Campaign. It was only then, <u>notably after the Campaign had been completed</u>, that Defendants indicated there was some problem with their ability to pay for the services rendered. Since that time, Defendants have refused to pay Extreme Reach for the outstanding invoices.

## COUNT I
### (<u>Breach Of Contract vs. GHM</u>)

17. Extreme Reach hereby repeats and realleges the allegations of paragraphs 1 through 16 hereof by reference as though fully set forth herein.

18. Extreme Reach and GHM entered into the Contracts as valid agreements supported by adequate consideration. Defendant Gartner signed the Contracts on behalf of GHM.

19. GHM submitted orders pursuant to the Contracts for services totaling $917,418.00. Extreme Reach has performed all of its obligations and has satisfied all conditions required of it under the Contracts. Extreme Reach performed its obligations in good faith, under the belief that GHM would honor the Contracts and would pay for the services Extreme Reach provided at the contractually agreed-upon rates.

20. GHM has breached the Contracts by failing to pay for the services rendered pursuant to the Contracts, in the amount of $917,418.00. GHM's failure to pay for services rendered is without excuse or defense.

21. As a result of such breaches, Plaintiff has suffered and will continue to suffer damages, in an amount to be determined at trial, but not less than $917,418.00.

## COUNT II
(Breach Of Implied Covenant Of Good Faith And Fair Dealing vs. GHM)

22. Extreme Reach hereby repeats and realleges the allegations of paragraphs 1 through 21 hereof by reference as though fully set forth herein.

23. As a matter of law, the Contracts contain and incorporate an implied covenant of good faith and fair dealing.

24. GHM's actions including, but not limited to failure to pay Extreme Reach's invoices, and continuing to request that Extreme Reach provide further and additional services despite GHM's inability to pay for, and lack of an intention to pay for, the services requested under the Contracts constitute a breach of the implied covenant of good faith and fair dealing contained and incorporated into the Contracts.

25. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Extreme Reach has suffered damages in an amount to be determined at trial, but not less than $917,418.00.

## COUNT III
(Unjust Enrichment vs. Both Defendants)

26. Extreme Reach hereby repeats and realleges the allegations of paragraphs 1 through 25 hereof by reference as though fully set forth herein.

27. Defendants received and accepted substantial services from Extreme Reach. Defendants received substantial, direct benefits from the provision of services by Extreme Reach to Defendants.

28.     Defendants have been unjustly enriched at Extreme Reach's expense by Defendants' receipt, acceptance and retention of the substantial benefits Defendants received from Extreme Reach's provision of service.

29.     As a direct and proximate result of Defendants' actions, Extreme Reach has been harmed and Defendants have been unjustly enriched in an amount to be determined at trial, but not less than $917,418.00.

## COUNT IV
(Fraud In The Inducement vs. Both Defendants)

30.     Extreme Reach hereby repeats and realleges the allegations of paragraphs 1 through 29 hereof by reference as though fully set forth herein.

31.     Defendants executed the Contracts and submitted orders to Extreme Reach for the purpose of inducing Extreme Reach to provide services to Defendants related to the Campaign.  Defendants represented that they were able to pay for such services and that Defendants intended to pay for such services.  Defendants knew, or should have reasonably known, at the time they submitted orders that they in fact could not pay for the services they were requesting and, in fact, had no intention to pay for the services the Defendants were requesting Extreme Reach continue to provide.

32.     Extreme Reach reasonably relied on Defendants' misrepresentations in executing the Contracts and agreeing to carry out the services.  In so doing, Extreme Reach has suffered and continues to suffer damages, in an amount to be determined at trial, but not less than $917,418.00.

**COUNT V**
(M.G.L. C. 93A – Unfair And Deceptive Trade Practices vs. Both Defendants)

33. Extreme Reach hereby repeats and realleges the allegations of paragraphs 1 through 32 hereof by reference as though fully set forth herein.

34. At all times relevant, Defendants have been engaged in trade or commerce within the meaning of M.G.L.C. 93A, § 1 et seq. Defendants have been engaged in the trade or commerce of advertising, and have done business with Extreme Reach in the Commonwealth of Massachusetts. The relevant events occurred primarily and substantially in the Commonwealth of Massachusetts.

35. Defendants have willfully and knowingly violated, in whole or in part, the provisions of G.L. c. 93A §2, which declares as unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

36. Defendants' actions as set forth above, including inducing Extreme Reach to provide services with no intention and/or ability to pay for those services, constitute unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Mass. Gen. Laws ch. 93A, §2, *et seq*., and actionable under §11.

37. As a direct and proximate result of such unfair and deceptive acts and practices, Extreme Reach has suffered and continues to suffer damages, in an amount to be determined at trial, but not less than $917,418.00. Extreme Reach is further entitled to multiple, including up to and including treble, damages and reasonable attorneys' fees in an amount to be determined at trial.

## **PRAYERS FOR RELIEF**

WHEREFORE, Extreme Reach requests the following relief:

1. That the Court enter judgment in favor of Extreme Reach and against Defendants on all Causes of Action in the Complaint;

2. That the Court award to Extreme Reach its damages, with interest in the maximum amount allowed by law, according to proof at trial, but not less than $917,418.00;

3. That the Court award to Extreme Reach damages in an amount of up to three times its actual damages, plus interest, costs and attorneys' fees pursuant to M.G.L. c. 93A;

4. That the Court award further just relief as it deems proper;

5. That the Court award to Extreme Reach recovery of its costs concerning this action, including attorneys' fees.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted,

**EXTREME REACH, INC.**

By its attorneys,

*/s/ Jeffrey E. Francis*
Jeffrey E. Francis (BBO # 639944)
jfrancis@pierceatwood.com
PIERCE ATWOOD LLP
100 Summer Street, Suite 2250
Boston, MA 02110
(617) 488-8100

DATED:    December 24, 2014